UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Darek Jon Nelson,<br><br>                    Petitioner,<br><br>v.<br><br>State of Minnesota,<br><br>                    Respondent. | Case No. 16-cv-4319 (MJD/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

Darek Jon Nelson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the Court recommends that the petition be denied.

**I.     Background**

In January 2013, Darek Jon Nelson pleaded guilty to first-degree premeditated murder and was sentenced to life in prison without the possibility of release.  *See Nelson v. State*, 880 N.W.2d 852, 855-56 (Minn. 2016).  Two years later, Nelson filed a petition for postconviction relief seeking to withdraw his plea on the grounds that it was not intelligent, accurate, or voluntary.  *Id.* at 857-61.  The state district court denied the petition, and the Minnesota Supreme Court affirmed.  *Id.* at 854.

In December 2016, this Court received a packet of documents from Nelson that was originally submitted to the United States Supreme Court.  [Doc. No. 1.]  Among those documents was a petition for a writ of certiorari that appeared to be raising claims

sounding in habeas corpus, specifically, claims challenging the validity of the guilty plea.

Because it was unclear whether Nelson intended to initiate a habeas corpus proceeding pursuant to 28 U.S.C. § 2254, this Court sought clarification from Nelson as to whether he wished to challenge the validity of his murder conviction. (Order, Jan. 4, 2017 [Doc. No. 3].) Nelson was given thirty days in which to either submit an amended habeas corpus petition or voluntarily dismiss this matter, failing which the original documents would be construed as a petition for a writ of habeas corpus brought pursuant to § 2254.

Nelson neither submitted an amended habeas corpus petition nor sought to withdraw his documents. Instead, Nelson submitted a "supplemental brief" in support of the originally-filed documents. (Pet'r's Suppl. Br. [Doc. No. 4-1].) The Court will construe the original documents as a petition for a writ of habeas corpus, as supplemented by the supplemental brief. Nelson presented the following three issues in his initial petition: (1) whether his lawyer should have taken a recess during the plea hearing to ask him further about the facts of the case or inform him that he could withdraw his guilty plea; (2) relatedly, whether his lawyer was required to ask him further about the facts of the case or inform him that he could withdraw his guilty plea; and (3) whether leading questions by the state district court caused there to be an inadequate basis for the plea. (Pet. at 2 [Doc. No. 1].)

Respondent filed an answer to the petition and a supporting memorandum on

2

April 28, 2017. [Doc. Nos. 9, 10.] Because Nelson's habeas petition did not identify any specific federal constitutional issues, Respondent construed the petition liberally as raising the same claims made to the Minnesota Supreme Court: (1) whether the guilty plea was intelligently entered and (2) whether the guilty plea was accurately entered. (Resp't's Mem. at 5 [Doc. No. 10].) Respondent also identified and addressed three other potential issues raised in Nelson's supplemental brief: (1) whether he was mentally competent to plead guilty, (2) the length of his sentence, and (3) the existence of newly discovered evidence. (*Id.* at 5-6 (citing Pet'r's Suppl. Br. at 2-4).)

On May 30, 2017, Nelson filed a motion for an extension of time to file a reply to Respondent's answer, in which he also asked to stay this habeas action so that he could file a second postconviction motion in state court. [Doc. No. 13.] The Court granted Nelson an extension of time to August 28, 2017, to file a reply, but denied his request for a stay because he had not provided sufficient information to ascertain whether a stay would be warranted under *Rhines v. Weber*, 544 U.S. 269 (2005). (Order, June 2, 2017 [Doc. No. 15].)

Nelson filed a reply to Respondent's answer on June 29, 2017. [Doc. No. 16.] He also filed a draft of a postconviction petition intended for state court. [Doc. No. 18.] He filed another such draft and supporting materials on November 6, 2017. [Doc. No. 20-23.] The draft petitions raise the same issues as the habeas petition: that the plea was invalid because it was not accurate or voluntary, that Nelson is not competent, that

3

there is newly discovered evidence, and "sentencing claims." [Doc. Nos. 18, 21.] The Clerk of Court forwarded the later-filed materials to the Chippewa County District Court. Nelson filed additional documents on November 15, 2017, December 11, 2017, and March 5, 2018, bringing the Court's attention to various prison and social issues and sending a copy of a screening questionnaire Nelson submitted to the Innocence Project of Minnesota. [Doc. Nos. 25-27.] The Court has considered these filings along with all of the other materials filed to date.

## II.   Discussion

Habeas relief under 28 U.S.C. § 2254 may be warranted in three circumstances: (1) when a state court decision was contrary to clearly established federal law, (2) when a state court decision involved an unreasonable application of clearly established federal law, or (3) when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." § 2254(d)(1), (2). However, a court may not grant a petition unless the petitioner has first exhausted all state court remedies. § 2254(b)(1)(A). If a petitioner "has the right under the law of the State to raise, by any available procedure, the question presented," the claim is not exhausted. § 2254(c). On the other hand, a court may deny a petition on the merits even if the petitioner has not exhausted all state court remedies. § 2254(b)(2).

The United States Supreme Court discussed the meaning of the "contrary to" and "unreasonable application" clauses of Section 2254(d) in *Williams v. Taylor*, 529 U.S.

4

362 (2000). A state court decision is "contrary to" the Supreme Court's precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 405. A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The habeas court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. A federal court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

In addition, when reviewing a state court decision, a federal habeas court "presumes that the state court's factual determinations are correct." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)). This deference applies to factual determinations made by the state trial and appellate courts. *Sumner v. Mata*, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 539 (8th Cir. 2003).

5

### A.  Newly Discovered Evidence Claim

To the extent Nelson intended to bring a claim for habeas relief based on newly discovered evidence, relief must be denied. Nelson has not identified any new evidence or linked any such evidence to a clearly established federal law or a factual determination made by the state courts. But whatever the new evidence might be, it is clear that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Nelson has not identified, much less established, any such independent constitutional violation. Without knowing the nature of the new evidence or the constitutional violation at issue, the Court cannot grant relief on this claim.

### B.  Competency and Sentencing Claims

A state prisoner such as Nelson must exhaust all of his state court remedies by fairly presenting his federal constitutional claims to each tier of state appellate review, before he may seek § 2254 relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The prisoner fairly presents a federal claim by referring "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citations omitted). The prisoner has not fairly presented a claim, however, if the reviewing state court "must read beyond a petition or brief (or a

similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

A federal claim that is not fairly presented to the reviewing state court may be either unexhausted or procedurally defaulted. A claim is unexhausted when it has not been fairly presented in one complete round of the state's established appellate review process, *O'Sullivan,* 526 U.S. at 845, but the prisoner still has the right under state law to raise the claim by an available procedure, 28 U.S.C. § 2254(c). A claim is procedurally defaulted when it has not been fairly presented in the state courts, and the state courts will no longer review it because an "independent and adequate state procedural rule" precludes further litigation of the claim. *Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991).

Minnesota has such an independent and adequate procedural rule: "[W]here a direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). *Knaffla* precludes consideration of not only claims that were raised on direct appeal but also claims that the petitioner knew about or should have known about but did not raise. *Id.* The Minnesota Supreme Court has "extended the *Knaffla* rule to claims that were, or should have been, raised in a previous postconviction petition." *Lussier v. State*, 853 N.W.2d 149, 152 (Minn. 2014).

7

When a claim is procedurally defaulted in state court, the federal habeas court must examine whether the prisoner has demonstrated cause for the default and actual prejudice resulting from it, or whether a failure to consider the claim will result in a fundamental miscarriage of justice. *McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997) (citing *Coleman*, 501 U.S. at 750). Prejudice need not be considered where a petitioner has failed to fulfill the cause prong of the test. *Id.* The miscarriage of justice exception is available only to a petitioner who has demonstrated that a constitutional violation has probably resulted in the conviction of an innocent person. *Id.* If the exceptions do not apply, the procedural default cannot be excused, and the court will deny the petition without addressing the merits of the claim. *See Carney v. Fabian*, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

The exhaustion requirement of § 2254 pertains "only to remedies still available at the time of the federal petition." *Gray v. Netherland*, 518 U.S. 152, 161 (1996) (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). Thus, claims procedurally barred under state law are exhausted for the purposes of federal habeas review. *Id.* at 161-62 (quoting *Castille v. Peoples*, 489 U.S. 346, 351 (1989)); *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him.").

There is no dispute that Nelson did not fairly present the competency claim or the sentencing claim to the state courts. The claims are nonetheless exhausted for purposes

8

of federal habeas review because there are no "currently available, non-futile state remedies" by which Nelson could present these claims. *See Smittie v. Lockhart*, 843 F.2d 295, 297 (8th Cir. 1988). Nelson did not pursue a direct appeal, but he did file a petition for postconviction relief, and he was represented by counsel during the postconviction proceedings. There is no conceivable reason why Nelson did not know or could not have known about the competency and sentencing claims by the time in which he would have had to file a direct appeal or when he actually filed his postconviction petition.

Finally, Nelson has not shown cause for failing to raise the claims to the state courts, actual prejudice, or the potential for a fundamental miscarriage of justice. Consequently, the competency and sentencing claims are procedurally defaulted, and the Court cannot excuse the default.

### C.     Nelson's Claims Relating to His Guilty Plea

A review of Nelson's appellant brief, pro se supplemental brief, and reply brief filed in the Minnesota Supreme Court reveals that Nelson did not directly present the federal nature of any claim to the Minnesota Supreme Court. (Resp't's Attach. 4 [Doc. No. 11-4], Attach. 5 [Doc. No. 11-5], Attach 7 [Doc. No. 11-7].) That is, he did not cite to a particular federal constitutional right, provision, or case. He did, however, cite to several state cases that do address a pertinent federal constitutional issue, namely:

- *Alanis v. State*, 583 N.W.2d 573, 577 (Minn. 1998), which cited *Brady v. United States*, 397 U.S. 742, 755 (1970), for the proposition that a defendant must be aware of the direct consequences of the guilty plea.

9

- *Bruestle v. State*, 719 N.W.2d 698, 704 (Minn. 2006), which cited *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for the proposition that counsel would be ineffective if (1) "counsel's decision not to pursue a mental illness or incompetency defense was unreasonable," and (2) "there was a reasonable probability that [the defendant] would not have pleaded guilty had his counsel pursued the defense."

- *State v. Raleigh*, 778 N.W.2d 90, 94, 96 (Minn. 2010), which cited *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), for the proposition that "a guilty plea must be accurate, voluntary, and intelligent"; and *Brady*, 397 U.S. 742, 749 (1970), for the tenet that the voluntariness of a plea is determined by considering all relevant circumstances.

- *State v. Hoaglund*, 240 N.W.2d 4, 5 (1976), which cited *McCarthy v. United States*, 394 U.S. 459, 465 (1969), for the rule that a trial court has the responsibility to establish an adequate factual basis before accepting a guilty plea.

- *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994), which cited *Alford*, 400 U.S. at 31, for the proposition that a guilty plea is valid if it is voluntary and intelligent.

(*See* Resp't's Attach 4 [Doc. No. 11-4].)  The Court will presume that Nelson fairly presented the federal nature of his challenges to his guilty plea to the extent set forth above.[1]  Finding the requirement of fair presentation met, the Court turns to the merits of

---

[1] The Court will not go so far as to construe Nelson's citation to state court cases citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984), as fairly presenting an ineffective assistance of counsel claim to the Minnesota state courts.  Nelson did not argue to the Minnesota Supreme Court that his counsel was ineffective.  Moreover, the state court case on which Nelson relied that cited *Strickland*—*Bruestle*—applied *Strickland* in circumstances not present here: where the defendant's counsel decided not to pursue a mental illness or incompetency defense.  *Bruestle*, 719 N.W.2d at 704.  Here, on the other hand, Nelson's counsel did obtain a competence evaluation.  Finally, Nelson does not assert an ineffective assistance of counsel claim in his habeas petition.  For these reasons,

10

the habeas claims relating to the validity of Nelson's guilty plea.

### 1. Relevant Facts

At the plea hearing, the state district court asked Nelson if he understood he was pleading guilty to murder in the first degree, which carried a sentence of life imprisonment without the possibility of release. (Resp't's Attach. 2 at 3 [Doc. No. 11-2].) Nelson's attorney summarized the plea agreement aloud and reminded Nelson about his legal rights and waiver of those rights. (*Id.* at 4-6.) Nelson's attorney also ascertained that Nelson was not using any medications, that he understood the proceedings, and that he had sufficient time to discuss the case with counsel. (*Id.* at 6-7.) Nelson's attorney then reviewed mental competence evaluations conducted at the St. Peter Regional Treatment Center and at the pretrial detention facility, both of which found Nelson competent. (*Id.* at 7-8.) Nelson confirmed that his Asperger's syndrome did not interfere with his ability to understand the proceedings. (*Id.* at 8.)

The court then questioned Nelson and ascertained that he understood the charges against him and that the charges carried a life sentence without the possibility of release, that he was satisfied with his lawyer's representation, that he had discussed the case with his lawyer, that his lawyer had been fully informed about the facts of the case, and that he had discussed possible defenses with counsel. (*Id.* at 8-10.) The court also reviewed the plea petition and various rights with Nelson and Nelson's waiver of those rights. (*Id.* at

---

the Court limits its discussion of counsel's conduct to the issues of voluntariness, intelligence, and accuracy of the plea.

11

10-17.) The court asked Nelson if he was innocent, to which Nelson answered, "No." (*Id.* at 17.) The court then questioned Nelson about the murder. (*Id.* at 18-25.)

Nelson said that he had brought a hunting knife to the restaurant where he and the victim worked on the day of the crime. (*Id.* at 18-19.) Nelson had been thinking about killing the victim for about five or six days because he "felt hurt . . . and needed to do something about it." (*Id.* at 20.) If he did not reach a "proper verbal agreement" with the victim, Nelson said, "she might get stabbed." (*Id.*) The court asked Nelson, "So, . . . if you didn't have a proper verbal agreement with her, you said you would stab her?" (*Id.* at 20-21.) Nelson responded, "Yes." (*Id.* at 21.) Nelson and the victim did not reach an agreement, so he followed the victim outside the restaurant after her shift, pulled the knife from his pocket, and stabbed her in the back. (*Id.* at 21-23.) The victim turned around, fell, and asked Nelson what he was doing. (*Id.* at 23.) Nelson testified that he "went forward and she got stabbed some more." (*Id.*) The court asked, "You stabbed her more times?" to which Nelson replied, "Yes." (*Id.*) Nelson said he was trying "to get her hurt . . . but . . . it went too far." (*Id.* at 24.) When the court pressed Nelson about whether he had planned it, Nelson said, "I think it was more I just lashed out irrationally and it just happened." (*Id.*) After a police officer arrived at the scene, Nelson said, "she got stabbed at least one more time." (*Id.* at 25.) The court asked, "You stabbed her even one more time after that?" (*Id.*) Nelson answered, "I believe so." (*Id.*) The court asked, "And was that to finish the job?" (*Id.*) Nelson replied, "More of a sigh of relief that it's

12

done." (*Id.*)

After this exchange, the court conferred with counsel and said, "Kind of shaky ground here, guys," and "It's . . . good for an *Alford* plea but it's not good for, it's not good factual basis unless he knows he was killing her and he kept at it." (*Id.* at 25-26.) The court took a recess so that Nelson's attorney could speak with Nelson, and when the proceeding resumed, the court continued questioning Nelson. (*Id.* at 27-28.)

> Q: Mr. Nelson, at some time during this event, I understand that [D.O.] came outside, is that correct?
>
> A: Yes.
>
> Q: And what did you do?
>
> A: I saw him and shooed him away.
>
> Q: You chased him away?
>
> A: Yes.
>
> Q: All right, and then did you go back after that to continue what you were doing?
>
> A: Yes.
>
> Q: In other words, to continue stabbing [the victim], is that right?
>
> A: Yes.
>
> Q: And is it true that at one point she grabbed the knife to try to stop you?
>
> A: Well, that was before [D.O.] appeared.
>
> Q: Before [D.O.] appeared she grabbed the—

13

A:  Yes.

Q:  —knife to try and—

A:  Yes.

Q:  All right, and did you pull the knife back away from her and keep stabbing her?

A:  Yes.

Q:  And by doing that, isn't it—you intended to kill her?

A:  Yes.

(*Id.* at 28-29.)  With that, the court found a sufficient factual basis for the plea and convicted Nelson of murder in the first degree.  (*Id.* at 29-30.)

At an evidentiary hearing on the postconviction petition, at which Nelson was represented by postconviction counsel, Nelson's trial attorney testified that he had represented Nelson for an extended period of time, from arraignment through sentencing.  (Resp't's Attach. 3 at 7 [Doc. No. 11-3].)  Trial counsel testified that Nelson had been very clear before the plea hearing that he wanted to enter a guilty plea.  (*Id.* at 8.)  Counsel also testified about the conversation he had with Nelson during the recess of the plea hearing.  He told Nelson that the court would not be able to accept the plea unless Nelson admitted to the underlying facts, but that it was up to Nelson whether he wanted to admit to the necessary facts or not.  (*Id.* at 9.)  Nelson indicated to counsel that he wanted to go forward.  (*Id.*)  Counsel denied telling Nelson what to say.  (*Id.* at 10-11.)  Counsel was certain that Nelson was not coerced into pleading guilty, that Nelson could

14

effectively communicate with and understand counsel, that Nelson understood the consequences of a guilty plea, that Nelson understood the rights described in the plea petition, that Nelson participated intelligently in his own defense, that the decision to plead guilty was Nelson's alone, and that Nelson's plea was voluntary. (*Id.* at 11-13, 16-17.) Counsel refuted an affidavit that Nelson submitted with his postconviction petition, in which he averred that counsel had told him "in order for things to move forward, I would have to answer yes to all of Judge Knutsen's questions." (*Id.* at 14.) Counsel also pointed out that he would not have known exactly what questions the court would ask, in what order, or how they would be phrased. (*Id.*) Through the affidavit, Nelson also denied premeditating the murder and intending to kill the victim. (*Id.* at 15.)

### 2.    Legal Standards

A waiver of the right to trial "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. The voluntariness of a guilty plea is determined by examining all of the relevant circumstances. *Id.* at 749. Under *Brady*, the standard for voluntariness of a guilty plea is:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business . . . .

15

*Id.* (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)). The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Alford*, 400 U.S. at 31. In *McCarthy v. United States*, the Supreme Court discussed Federal Rule of Criminal Procedure 11, which requires a court to personally address a defendant intending to plead guilty and ascertain that the defendant understands the nature of the charges and the potential consequences. 394 U.S. 459, 464 (1969); Fed. R. Crim. P. 11(b). The purpose of the requirement is to assist the court in ensuring the plea is voluntary. *McCarthy*, 394 U.S. at 465.

### 3.  Whether Nelson's Plea was Voluntary, Intelligent, and Accurate

Nelson argues that the state courts erred in concluding that his plea was entered intelligently, voluntarily, and accurately. The Court disagrees. The state courts' determination that the plea was entered intelligently, voluntarily, and accurately was neither contrary to clearly established Supreme Court precedent nor based an unreasonable determination of the facts.

It is true that, as the Minnesota Supreme Court acknowledged, "Nelson did not receive much, if any, tangible benefit by pleading guilty to an offense for which he would be sentenced to life in prison without the possibility of release." *Nelson*, 880 N.W.2d at 858. But that is not the standard under which the intelligence of a plea is assessed. The

16

question is whether Nelson understood the nature of the charges against him, his rights, and the consequences of pleading guilty. *See Brady*, 397 U.S. at 748. By all indications, he did. The state district court advised Nelson of the nature of the charges, the presumptive sentence, his rights, and the consequences of waiving those rights, and Nelson expressed his unequivocal understanding of that information. Nelson was found mentally competent to understand the nature of the proceedings and to assist in his defense, and he told the court that his Asperger's syndrome did not affect his ability to comprehend the proceedings. Finally, Nelson was represented by counsel. *Cf. Brady*, 397 U.S. at 748 n.6 (noting that "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney").

Turning to whether Nelson's lawyer adequately informed him that he could withdraw his guilty plea and proceed to trial, Nelson relied in the postconviction proceedings on a state court case, *State ex rel. Dehning v. Rigg*, 86 N.W.2d 723, 725 (Minn. 1957). Nelson cites no comparable, clearly established federal precedent. In any event, *Dehning* held that "when an issue arises during a plea hearing on whether an element of an offense can be met, the court should ensure that the defendant may consult with counsel and opt to proceed to trial." *Nelson*, 880 N.W.2d at 859 (citing *Dehning*, 86 N.W.2d at 725). As the Minnesota Supreme Court determined, "the district court did just that; it gave Nelson and his counsel an opportunity to confer. They did so." *Id.* This was not an unreasonable determination in light of the facts of record. Not only did the

17

state district court recess the plea hearing to allow Nelson to consult with his lawyer, the record shows that Nelson was advised several times before and during the plea hearing, by his lawyer and the court, of his right to a trial by jury, his waiver of that right by pleading guilty, and that if he pleaded not guilty, he would receive a trial and would be presumed innocent until his guilt was proven beyond a reasonable doubt.

Nelson's argument that his attorney did not adequately inquire into the facts of the case relates to the accuracy of his plea. There is little support for this argument. Rather, Nelson's trial counsel had represented him since he was arraigned—about a year—and had met with Nelson repeatedly. *See Nelson*, 880 N.W.2d at 859. Further, it is clear from the substance of the bench conferences that Nelson's attorney was well-versed in the facts of the case. Even so, the court recessed the hearing so that Nelson could confer further with his attorney about the facts. Finally, counsel testified at the postconviction hearing that he and Nelson had met and "discussed the case in great detail several times. Of course, we shared every scrap of information that we were given by the State with him and reviewed it as needed and as desired by him . . . ." (Resp't's Attach. 3 at 11 [Doc. No. 11-3].) Nelson did not refute this testimony.

Nelson's challenge to the leading questions posed by the trial court also relates to the accuracy of his plea. Though the Minnesota Supreme Court has discouraged the use of leading question to establish a factual basis for a plea, it has "never held that the use of leading questions automatically invalidates a guilty plea." *Nelson*, 880 N.W.2d at 860.

18

Not only is there no clearly established federal law barring the use of leading questions, but federal courts "have come to exactly the opposite conclusion." *Sabby v. Smith*, No. 14-cv-277 (SRN/TNL), 2015 WL 501953, at *16 (D. Minn. Feb. 5, 2015) (citing cases). As long as a defendant fully admits to each element of the crime, that the factual basis was elicited through leading questions does not violate clearly established federal law. *Id.* at *17.

The final issue is the voluntariness of the plea. Nelson has not made a cogent challenge to voluntariness, but the Court has reviewed all of the relevant circumstances and finds that the guilty plea was voluntary. Nelson was fully aware of the direct consequences of pleading guilty, and there were no threats, promises, or misrepresentations.

### D.     No Certificate of Appealability Is Warranted

Before appealing a final ruling on a federal habeas petition, a state prisoner must be granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). The Court cannot grant such a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994).

19

This Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Nelson's claims any differently than recommended here. Nelson has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. The Court therefore recommends that Nelson not be granted a COA.

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Darek Jon Nelson's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED**;

2. This action be **DISMISSED**; and

3. No certificate of appealability be issued.

Dated:  March 19, 2018              s/ *Hildy Bowbeer*
                                    HILDY BOWBEER
                                    United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).